IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TEMPIE ANN BELL,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )          1:14CV188
ROBERT A. MCDONALD,                 )
Secretary, Department of            )
Veterans Affairs,                   )
                                    )
          Defendant.                )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

     Presently before this court is Defendant's Motion for
Summary Judgment with supporting Memorandum. (Docs. 26, 27.)
Plaintiff filed a response in opposition (Doc. 32), and
Defendant filed a reply (Doc. 38). This court has carefully
reviewed Defendant's Motion and Memorandum, Plaintiff's
Response, and Defendant's Reply. For the reasons stated below,
this court will grant Defendant's Motion for Summary Judgment.
In light of this finding, Defendant's motion to withdraw and
motion to continue (Doc. 44) will be denied as moot.

## I.   PROCEDURAL BACKGROUND

     Plaintiff Tempie Ann Bell ("Plaintiff") commenced this
action by filing a Complaint with this court on March 4, 2014,

against Defendant Robert A. McDonald, Secretary of Department of Veterans Affairs ("Defendant"). (Complaint (Doc. 1).) Plaintiff moved to amend her complaint on June 10, 2014. (Doc. 5.) This court granted Plaintiff's motion on September 29, 2014. (Doc. 10.) Plaintiff filed her Amended Complaint on October 11, 2014. (Amended Complaint ("Am. Compl.") (Doc. 11).) In her Amended Complaint, Plaintiff asserted four causes of action: (1) wrongful discrimination and harassment because of a disability, (2) retaliation, (3) breach of contract based on Defendant's alleged violation of a Settlement Agreement, and (4) a request to enjoin Defendant from collecting any tuition assistance money from Plaintiff. (Id. at 7-9.)

While Plaintiff's motion to amend was pending, Defendant filed a motion to dismiss Plaintiff's Third and Fourth Causes of action with supporting Memorandum. (Docs. 6, 7.) Per this court's September 29, 2014 Order (Doc. 10)), and subsequent to the filing of Plaintiff's Amended Complaint (Doc. 11), Defendant filed a Notice to the court (Doc. 13) requesting that this court rule on Defendant's Motion to Dismiss (Doc. 6) as if it had been filed subsequent to the Amended Complaint.

On June 1, 2015, this court filed a Memorandum Opinion and Order and granted Defendant's Motion to Dismiss Plaintiff's

Third and Fourth Cause[s] of Action, but allowed Plaintiff the right to file, within ten days from the entry of the Memorandum Opinion and Order, an amended complaint for the limited purpose of waiving all damages in excess of $10,000 in Plaintiff's third cause of action. (Doc. 15 at 17.) This court further ordered that if Plaintiff did not amend her complaint, the third cause of action would be dismissed without prejudice. (Id.) Plaintiff filed a Notice of Election and chose not to amend her complaint. (Doc. 16.)

As such, only two of Plaintiff's claims remain: (1) discrimination and harassment based on disability in violation of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), and (2) retaliation. (Am. Compl. (Doc. 11) ¶¶ 22-27). Defendant has moved for summary judgment on both remaining claims. (Doc. 26.) Plaintiff has responded. (Resp. to Mot. for Summ. J. ("Pl.'s Resp.") (Doc. 32); and Defendant has filed a reply (Doc. 38).

II.  **FACTUAL BACKGROUND**

Viewed in light most favorable to Plaintiff, the evidence shows the following:

Plaintiff was an employee of the Department of Veterans Affairs ("VA"), with her primary place of employment at the VA

Medical Center in Durham, North Carolina ("DVAMC"). (Am. Compl.

(Doc. 11) ¶ 2.) Plaintiff worked as a Staff Nurse, an Assistant

Nurse Manager, and a Lead Charge Nurse for a number of years at

DVAMC. (Def.'s Br. in Supp. of Summ. J. ("Def.'s Br.") (Doc. 27)

at 3; Ex. C ("Resume") (Doc. 27-4) at 3-4.)

As a result of an earlier discrimination suit in this

district, Plaintiff and Defendant entered into a Settlement

Agreement ("Agreement") in 2005.[1] (Am. Compl. (Doc. 11) ¶ 4.)

Pursuant to the Agreement, Plaintiff was assigned a new position

at DVAMC as a diabetes educator. (Def.'s Br., Ex. E (Doc.

27-7).) This new position was created for Plaintiff. (Id.,

Ex. D1 ("Pl.'s Dep.") (Doc. 27-5) at 21.)[2] The Agreement required

Plaintiff to obtain certification as a Diabetes Educator from

the National Certification Board for Diabetes Education

("NCBDE") by May 31, 2006.[3] (Am. Compl. (Doc. 11) ¶ 6; Agreement

(Doc. 27-7) ¶ 5(c).) Plaintiff understood that if she did not

obtain the certification, Defendant was permitted to reassign

---

[1] The case was captioned with Case Number 1:03CV538.

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

[3] The parties later executed a Supplemental Agreement giving
Plaintiff until May 31, 2007, to obtain the NCBDE certification.
(Def.'s Br., Ex. F (Doc. 27-8) at 2.)

Plaintiff from diabetes educator to a different position within the DVAMC. (Agreement (Doc. 27-7) ¶ 5(c); Pl.'s Dep. (Doc. 27-5) at 44-45.)

As a result of several conversations in 2007 and 2009 with her DVAMC supervisor, Gwen Waddell-Schultz ("Ms. Waddell-Schultz"), Plaintiff believed that if she was pursuing a Master's Degree, she need "not worry about" getting the diabetes certification. (Pl.'s Dep. (Doc. 27-5) at 35-36.) However, in March 2009, a Proficiency Report signed by Ms. Waddell-Schultz and Plaintiff listed "[t]o become certified in diabetes education" as one of Plaintiff's "2009 Nursing Goals." (Def.'s Br., Ex. G-1 (Doc. 28-2) at 5-6.)

Plaintiff completed her Master's Degree in August 2009. (Resume (Doc. 27-4) at 2.) In September 2009, Ms. Waddell-Schultz sent Plaintiff a notice reminding her of the certification obligation and advising her to complete the exam by November 2009, and to be in compliance with the Agreement by December 20, 2009. (Def.'s Br., Ex. G-2 (Doc. 28-3).) Plaintiff never obtained the NCBDE certification. (See Am. Compl. (Doc. 11) ¶ 8). Effective January 25, 2010, Plaintiff was reassigned from her position in diabetes education to a ward nursing position. (See Def.'s Br. Ex. G-4 ("Notice of Reassignment")

(Doc. 28-5); see also Am. Compl. (Doc. 11) ¶ 9.) The
reassignment did not change Plaintiff's job title as Staff Nurse
or result in the reduction of rank, salary, benefits, or
potential for promotion. (Def.'s Br., Ex. G ("Waddell Decl.")
(Doc. 28-1) ¶ 12.)

Plaintiff suffers from chronic back pain that limits her
ability to work. (Am. Compl. (Doc. 11) ¶ 7.) Plaintiff provided
her DVAMC supervisors a letter from a physician outlining
Plaintiff's permanent restrictions and providing guidelines for
how Plaintiff's job duties could meet these restrictions.
(Def.'s Br., Ex. I ("Physician Ltr.") (Doc. 29-2) at 2-3.) The
restrictions were: (1) a seven-hour work day; (2) daytime work
hours (to avoid nighttime driving); (3) no lifting more than 20
pounds; (4) avoidance of extensive bending; and (5) rest from
walking/standing as needed. (Id. at 2.) At some point, Plaintiff
alleges she was asked to provide additional medical information.
(Def.'s Br., Ex. A ("EEOC 1") (Doc. 27-2) at 3.)

Defendant acknowledged the restrictions, advised Plaintiff
to follow the restrictions, and concluded that Plaintiff's
abilities were within the scope of the ward nursing position.
(Notice of Reassignment (Doc. 28-5); Ex. G-5 (Doc. 28-6).) The
requirements of the position were also modified to account for

Plaintiff's work restrictions. (See Waddell Decl. (Doc. 28-1) ¶ 15; see also Def.'s Br., Ex. J ("Adalam Decl.") (Doc. 29-3) ¶¶ 9, 13.) Additionally, Plaintiff was assigned a preceptor to help with job duties. (Pl.'s Resp., Ex. 2 ("Adalam Dep.") (Doc. 32-3) at 7, 12, 20.) Plaintiff's preceptor felt that it was probably unsafe for Plaintiff to be assigned to a ward with her medical limitations. (Id., Ex. 3 (Doc. 32-4) at 4.) Plaintiff's supervisor, Sampoorna Adalam ("Ms. Adalam"), met with Plaintiff and her preceptor once a week to check on Plaintiff's progress on the ward. (Adalam Dep. (Doc. 32-3) at 7-8.) Despite the modifications, Plaintiff had difficulty with the work assigned. (Am. Compl. (Doc. 11) ¶ 10.)

Plaintiff complained to senior management and protested the reassignment, but was returned to ward nursing duties. (Id. ¶ 9.) From May 3, 2010 to May 7, 2010, Plaintiff submitted four "Assignment Despite Objection" forms claiming she was given assignments that did not meet her medical restrictions. (Pl.'s Resp., Ex. 4 (Doc. 32-5).) Ms. Adalam reviewed one of these objections with Plaintiff and her preceptor and determined that Plaintiff could perform the assignment within her restrictions. (Adalam Decl. (Doc. 29-3) ¶ 14; Adalam Dep. (Doc. 32-3) at 12-14, 18, 27.)

Plaintiff does not dispute that she was allowed to work a seven-hour daytime shift in compliance with the first two restrictions. (Pl.'s Dep. (Doc. 27-5) at 55-56.) Because Plaintiff worked a seven-hour shift, she accumulated one hour each day of leave without pay ("LWOP"), which was an approved leave status, and was required to submit LWOP forms for those hours. (Waddell Decl. (Doc. 28-1) ¶ 17.) However, Plaintiff asserts that she experienced problems staying within the confines of the other three restrictions.

Plaintiff asserts she was given tasks outside the lifting restriction when she was given category 3 and 4 patients who required lifting or moving. (Pl.'s Dep. (Doc. 27-5) at 70.) Plaintiff was instructed to ask other nurses for help if a patient needed lifting. (Id. at 60; Waddell Decl. (Doc. 28-1) ¶ 15; Adalam Decl. (Doc. 29-3) ¶¶ 9, 13.) Plaintiff did not violate her lifting restriction (Pl.'s Dep. (Doc. 27-5) at 65) and was not disciplined for following this restriction. (See Waddell Decl. (Doc. 28-1) ¶ 15; Adalam Decl. (Doc. 29-3) ¶ 12.)

Plaintiff asserts she had to pick things up off of the floor, which conflicted with her avoidance of extensive bending. (See Pl.'s Dep. (Doc 27-5) at 74.) However, Plaintiff acknowledged that she would find alternate ways to accomplish

these tasks or would ask for help. (Id. at 74-75.) Plaintiff was not disciplined for following this restriction. (See Waddell Decl. (Doc. 28-1) ¶ 15; Adalam Decl. (Doc. 29-3) ¶ 12.)

Plaintiff asserts she was allowed to rest in the morning and at lunch but was admonished for resting too much in the afternoon, despite the restriction that she rest from walking or standing as needed. (Pl.'s Dep. (Doc. 27-5) at 77-80.) Specifically, Plaintiff asserts she was not allowed a 15-minute break in the afternoon. (Id. at 79.) Pursuant to the VA's contract with the nurses' union, nurses were entitled to a 15-minute break for every four hours of duty. (Def.'s Br., Ex. G-6 (Doc. 28-7) at 4.) Plaintiff was not entitled to a 15-minute break in the afternoon because she only worked a three-hour afternoon shift. (Waddell Decl. (Doc. 28-1) ¶ 16.) Plaintiff was not advised that this policy meant she could not rest as needed. (Id.; Pl.'s Dep. (Doc. 27-5) at 79-80.)

Plaintiff alleges there were times when staff or patients were "ugly" to her or patients asked "[w]hat good are you?" when Plaintiff needed help because of her restrictions. (Pl.'s Dep. (Doc. 27-5) at 58-59.) Plaintiff never made additional suggestions to her supervisors for other accommodations that would help Plaintiff. (Id. at 87-88.)

All new nurses assigned to the ward where Plaintiff was transferred were required to complete the same 8-week orientation. (Adalam Aff. (Doc. 29-3) ¶¶ 4-6.) During orientation, nurses had to complete the "Orientation Competency Checklist." (Id. ¶ 5). Plaintiff began orientation on February 1, 2010. (Id. ¶ 7.) As of August 10, 2010, Plaintiff's last day at DVAMC, she had not completed all of her competencies. (Id. ¶ 8; Def.'s Br., Ex. J-1 (Doc. 29-4).) Plaintiff did not complete competencies that were within her restrictions (such as medication administration), and Plaintiff was advised to seek help with any competency she felt was outside of her restrictions. (Physician Ltr. (Doc. 29-2) at 2-3; Adalam Decl. (Doc. 29-3) ¶¶ 9-10.) Ms. Waddell-Schultz drafted a proposed suspension based on Plaintiff's failure to complete the competencies as required and met with Plaintiff on August 10, 2010, regarding the proposal. (See Def.'s Br., Ex. G-10 ("Proposed Suspension") (Doc. 28-11).)

Plaintiff asserts that during her time on the ward, between February and August 2010, she had numerous confrontations with her managers, was followed, stalked, threatened with arrest, and was the target of harassing and demeaning conduct by her managers. (Am. Compl. (Doc. 11) ¶ 11.) Plaintiff asserts she

sought assistance during this time from her union and senior management, but remained assigned to ward nursing. (Id.) On June 15, 2010, Plaintiff advised police that she was being stalked and harassed by Ms. Waddell-Schultz. (Def.'s Br., Ex. N ("Police Report") (Doc. 29-9) at 2; Pl.'s Resp., Ex. 9 ("Witness Statement") (Doc. 33-5).) The police found this accusation to be "unfounded." (Police Report (Doc. 29-9) at 3.)

Also during this period, the hospital continued to provide diabetes education, but that work was decentralized and assigned to others who were not certified. (Am. Compl. (Doc. 11) ¶ 12; Pl.'s Resp., Ex. 6 (Doc. 33-2) at 4-6.) Because of budgeting constraints, the diabetes educator position was eliminated after Plaintiff's reassignment. (Waddell Decl. (Doc. 28-1) ¶ 9; Pl.'s Resp., Ex. 17 (Doc. 35-3) at 2-4.) Plaintiff requested transfers to other work that was less physically demanding, but those transfers were refused. (Am. Compl. (Doc. 11) ¶ 13.) Specifically, Plaintiff requested to be transferred to a different nursing ward or to a different department within DVAMC during a two-week period when she needed light duty assignment following finger surgery. (Pl.'s Dep. (Doc. 27-5) at 81-85).

On April 23, 2010, Plaintiff received an admonishment for "Absence without Leave" and "Failure to Follow Instruction on

Requesting Leave." (Def.'s Br., Ex. G-7 (Doc. 28-8).) The incident occurred when Plaintiff brought a doctor's note stating that she needed a "primarily sitting" position. (Waddell Decl. (Doc. 28-1) ¶ 20; Adalam Decl. (Doc. 29-3) ¶ 15.) Plaintiff was advised that no such position was available and she would need to take leave. (Adalam Decl. (Doc. 29-3) ¶ 15.) Plaintiff did not show for work for two days without requesting leave. (Id.) Plaintiff was admonished but was not suspended and did not receive a loss in pay, benefits, or rank. (Waddell Decl. (Doc. 28-1) ¶ 20.)

On May 20, 2010, Plaintiff filed a complaint in state court challenging the transfer from diabetes educator to ward nurse. (Am. Compl. (Doc. 11) ¶ 10.) The action was removed to this district and later dismissed.[4] (Id.)

On July 15, 2010, Plaintiff was given a "Notice of Decision-Suspension" suspending Plaintiff for one day because of "Failure to Follow a Written Instruction" and "Disrespectful Conduct towards your Supervisor." (Def.'s Br., Ex. L ("Suspension Notice") (Doc. 29-7).) The suspension followed an incident that occurred after Plaintiff had finger surgery and came to work with a doctor's note for light duty. (Def.'s Br.,

---

[4] The case was captioned with Case Number 1:10CV475.

Ex. G-9 ("June Memo") (Doc. 28-10).) Plaintiff was advised there were no light duty positions in her area and that pursuant to policy, she could not be given light duty in another area. (Id.; Def.'s Br., Ex. G-8 (Doc. 28-9) at 2.) Plaintiff became angry, was speaking over her supervisors, and would not listen to their instructions. (June Memo (Doc. 28-10).) Plaintiff returned to work approximately two weeks later after she was cleared by a doctor. (Waddell Decl. (Doc. 28-1) ¶ 21; Def.'s Br., Ex. M (Doc. 29-8).)

On August 10, 2010, Ms. Waddell-Schultz confronted Plaintiff and threatened to initiate the revocation of Plaintiff's nursing license. (Am. Compl. (Doc. 11) ¶ 14; Proposed Suspension (Doc. 28-11).) Plaintiff asserts that the confrontation caused her to become so distraught that she fell, hit her head, and suffered several injuries. (Am. Compl. (Doc. 11) ¶ 15.) Plaintiff filed a worker's compensation claim. (Id. ¶ 16.) Plaintiff alleges that as a result of her fall and inability to work due to injuries sustained from the fall, Defendant "continued its pattern of unjustified actions against Plaintiff," such as refusing to continue her pay, not recognizing her leave, refusing leave requests, and refusing other jobs not on a nursing ward. (Id. ¶ 17.)

On or about September 16, 2010, Defendant insisted Plaintiff return to work as a ward nurse or be terminated. (Id. ¶ 18.) Defendant terminated Plaintiff in March 2011.[5] (Id.)

Plaintiff filed two EEOC claims regarding the above matters (January 15, 2010 and September 29, 2010), and the agency issued its final decision on December 9, 2013. (Id. ¶ 19; EEOC 1 (Doc. 27-2); Def's Br., Ex. B ("EEOC 2") (Doc. 27-3).)

## III. **LEGAL STANDARD**

Summary judgment is appropriate where an examination of the pleadings, affidavits, depositions, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing

---

[5] Plaintiff's termination was the subject of a separate lawsuit in the Middle District of North Carolina, Case Number 1:12CV57. This court ruled in favor of Defendant, which was subsequently affirmed on appeal by the Fourth Circuit.

that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Id. at 255. A mere factual dispute is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48. Material facts are those facts necessary to establish the elements of a party's cause of action. Anderson, 477 U.S. at 248. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## IV.  **ANALYSIS**

As an initial matter, this court notes that Plaintiff's allegations in the Amended Complaint claiming certain facts and circumstances leading to her termination following her August 2010 injury were discriminatory, retaliatory, or both were already addressed by this court and found not to be

discriminatory or retaliatory. <u>Bell v. Shinseki</u>, No. 1:12CV57, 2013 WL 3157569 (M.D.N.C. June 20, 2013), <u>aff'd,</u> 584 F. App'x 42 (4th Cir. 2014). Specific findings by this court were: (1) that Defendant was not required to offer Plaintiff medical leave as a reasonable accommodation for her disability following the August 10, 2010 injury; (2) that Plaintiff's proposed accommodation to reassign her to her former role as a diabetes educator during the months she was absent without leave following the August 10, 2010 incident would have been futile and that any requested leave would have been unreasonable as a matter of law; and (3) that Defendant had a legitimate, non-retaliatory reason for discharging Plaintiff, and Plaintiff's evidence was insufficient to call into question the legitimacy of Defendant's rationale. Based on this court's findings in that case, the following allegations of discriminatory or retaliatory actions by Defendant following the August 10, 2010 incident will not be further considered because they were resolved in the prior judgment: refusing to continue her pay, not recognizing her leave, refusing leave requests, refusing other jobs not on a nursing ward, and providing a reenactment of the August 10, 2010 fall to worker's compensation officers.

Additionally, this court notes that Plaintiff did not allege a separate claim for failure to provide reasonable accommodations under the ADA. Plaintiff's Amended Complaint delineated four separate causes of action, two of which remain, and none of which asserted a claim for failure to accommodate. The factual allegations in the complaint are insufficient to state a separate cause of action for reasonable accommodation and did not fairly place Defendant on notice that Plaintiff was pursuing a separate claim for failure to accommodate. See Mason v. Wyeth, 183 F. App'x 353, 359-60 (4th Cir. 2006). At best, the allegations put Defendant on notice that returning Plaintiff to "duty in a nursing position which nominally recognized and accommodated her continuing medical restrictions" was part of Plaintiff's claim for disability discrimination. (Am. Compl. (Doc. 11) ¶ 9.)

Even if Plaintiff had sufficiently alleged a separate reasonable accommodation claim, it would not change Defendant's entitlement to summary judgment. Plaintiff did not support, with sufficient evidence, any allegations that she requested and was denied specified accommodations other than a transfer. In Plaintiff's brief, she asserts Defendant failed to engage in an interactive process to identify reasonable accommodations, yet

Plaintiff admits she did not request additional accommodations to aid her performance on the nursing ward and further admits she was able to do the job and provide adequate care. (Pl.'s Dep. (Doc. 27-5) at 87-88; Pl.'s Resp. (Doc. 32) at 4, 6.)[6]

Plaintiff offers the conclusory statement from her preceptor that it was probably unsafe for Plaintiff to be assigned to a ward, and further argues that Defendant requiring other employees to assist her with certain duties was an unreasonable accommodation. ((Pl.'s Resp. (Doc. 32) at 2-3.) It is true that the ADA does not require a defendant to provide an assistant to help perform essential functions of a job. See Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997) (stating employer not required to hire an additional person to perform an essential function of a disabled employee's

_____

[6] Plaintiff argues in her brief that her transfer to the nursing ward was not a reasonable accommodation. (Pl.'s Resp. (Doc. 32) at 2-3 (citing Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 323 (4th Cir. 2011), and Bratten v. SSI Servs., Inc., 185 F.3d 625, 623 (6th Cir. 1999)).) These cases stand for the proposition that it is not reasonable to require an employer to make certain accommodations. As discussed hereafter, an employer is not prohibited from making an accommodation that is more than required by law. More importantly, in the absence of a failure to accommodate claim, no facts have been presented as to what constitutes essential and non-essential job functions. Asking the court to make inferences about job duties as to an unreasonable accommodation in the absence of any claim or evidence of an unreasonable accommodation is not sufficient to create a material issue of fact.

position). However, choosing to provide this accommodation does not make it unreasonable. See Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995) ("Discouraging discretionary accommodations would undermine Congress' stated purpose of eradicating discrimination against disabled persons."). Further, the accommodation need not be "perfect" or the "most preferable to the employee." Fink v. Richmond, 405 F. App'x 719, 723 (4th Cir. 2010).

Plaintiff suggests that her request for reassignment to her previous position or to a new department within the DVAMC following finger surgery would have been a reasonable accommodation. A reasonable accommodation may include reassignment, but the proposed position should be vacant or set to become vacant within a reasonable amount of time. Lamb v. Qualex, Inc., 33 F. App'x 49, 59 (4th Cir. 2002); EEOC v. Sara Lee Corp., 237 F.3d 349, 355 (4th Cir. 2001). The position must also be one for which a plaintiff is qualified. See 29 C.F.R. § 1630.2(o). A defendant is not required to create a new position, Lamb, 33 F. App'x at 59, nor is a defendant required to disrupt a non-discriminatory company policy. Sara Lee Corp., 237 F.3d at 355.

The diabetes educator position was eliminated due to budget cuts after Plaintiff was reassigned to the nursing ward, but even if it was not, Plaintiff was not entitled to reassignment there. See Schneider v. Giant of Maryland, LLC, 389 F. App'x 263, 271-72 (4th Cir. 2010) (stating employer's refusal to restore employee to his previous position that required less standing does not show employer failed to provide reasonable accommodations). Plaintiff presented no other requests for open positions other than a transfer to another department for the two weeks she needed light duty following finger surgery. However, Plaintiff offered no evidence that she was qualified for the job in that department nor any basis for Defendant to disregard the DVAMC policy that light duty positions must be in the employee's area. See Wilson v. Dollar Gen. Corp., 717 F.3d 337, 347 (4th Cir. 2013) (stating "an employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible"). Plaintiff was advised to take leave until she recovered, which is a reasonable accommodation in this case. See Corbell v. City of Holly Hill, Civil Action No. 5:13-cv-00324-JMC, 2014 WL 4722194, at *9 (D.S.C. Sept. 22, 2014)

(providing leave to recover from surgery in lieu of light duty work is a reasonable accommodation).

Plaintiff's evidence is insufficient to support a claim that reasonable accommodations were not provided, were requested and denied, or were necessary for performance of her essential job functions.

## A.    **Disability Discrimination**

The Rehabilitation Act and the ADA prohibit discrimination against employees on the basis of disability. See 29 U.S.C. § 791 et seq.; 42 U.S.C. § 12101 et seq. The substantive standards for determining liability under the Rehabilitation Act are the same as those under Title I of the ADA. Myers, 50 F.3d at 281.

In the absence of direct evidence of discriminatory intent, disability discrimination claims proceed under the McDonnell Douglas burden-shifting framework. Perry v. Computer Scis. Corp., 429 F. App'x 218, 219-20 (4th Cir. 2011). Under that framework, a plaintiff must first present a prima facie case of disability discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case of disability discrimination, a plaintiff must show that (1) she has a disability; (2) she was otherwise qualified to perform the

job; and (3) she suffered an adverse employment action solely on the basis of the disability. Perry, 429 F. App'x at 220 (citing Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005)).

If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Perry, 429 F. App'x at 220. If an employer does so, "the plaintiff then has an opportunity to prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reason, but were a pretext for discrimination.'" Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

For purposes of the summary judgment motion, Defendant does not contest that Plaintiff was disabled within the meaning of the ADA or that she was otherwise qualified for the job. Plaintiff's prima facie case turns on whether she presented sufficient evidence that she suffered an adverse employment action solely on the basis of her disability.

"An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different
responsibilities, or a decision causing a significant change in
benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th
Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S.
742, 761 (1998)). Plaintiff must show that Defendant took the
action solely because of her disability. Mason, 183 F. App'x at
361. "The critical issue for consideration in the 'because of'
inquiry is whether a disabled plaintiff has been 'exposed to
disadvantageous terms or conditions of employment to which [non-
disabled employees] are not exposed.'" Id. (alteration in
original).

Plaintiff alleges the following adverse actions: (1) a
transfer from diabetes education to a nursing ward; (2)
Defendant's refusal to transfer Plaintiff back to diabetes
education and refusal to transfer her to a different department
following finger surgery;[7] (3) being followed, stalked,
threatened with arrest, and harassment by her supervisors; and

_____

[7] Plaintiff's complaint did not sufficiently allege that her
temporary finger injury requiring a two-week light duty
assignment was a disability within the meaning of the ADA.
Therefore, allegations relating to Defendant's failure to
transfer Plaintiff to another department during these two weeks
are only evidence to support Plaintiff's allegations of
discrimination and retaliation due to her back-related
disability.

(4) threats by her supervisor to have her nursing license revoked.

## 1. Allegations of Adverse Employment Actions Based on Disability

### (a) Transfer from Diabetes Education to Nursing Ward

Plaintiff alleges the transfer was inappropriate because she objected to it and because it involved work she should not have been expected to do. Plaintiff did not allege the transfer was a demotion or caused a decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion, which are "typical requirements for a showing of an adverse employment action." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999) (internal quotation marks omitted). However, "a change in working conditions may be a factor to consider in assessing whether a reassignment qualifies as an adverse employment action" that could give rise to liability. Id. at 256. Unfamiliarity and increased stress resulting from the transfer cannot support a claim of discrimination. Id. at 255-56. Nor can a mere change in an employee's job assignment, even if it is "less appealing to the employee." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004). "[A]bsent any decrease in compensation, job

title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. at 376 (quoting Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999).

As already noted, Plaintiff did not allege any decrease in compensation, job title, level of responsibility, or opportunity for promotion. In fact, it appears that Plaintiff retained her same job title and experienced no reduction in salary, benefits, or potential for promotion. Plaintiff asserts that the work was difficult and that she found it demeaning to request the help of co-workers, but asserts that the fact that she "was able to do the job at all with her limitations and not have any complaints about the quality of her care is a testimony to her determination to work." (Pl.'s Resp. (Doc. 32) at 4.) This self-serving assertion, unsupported by any other evidence of adverse effects on the terms, conditions, or benefits of employment, are insufficient. See Edmonson v. Potter, 118 F. App'x 726, 729 (4th Cir. 2004).

Plaintiff further argues that she was singled out and transferred out of diabetes education for failure to obtain her

certification although other employees assigned to diabetes education were not certified. However, Plaintiff entered into an Agreement with the DVAMC in which she agreed to obtain NCBDE certification or face the possibility of transfer. The Agreement also created a new job for Plaintiff. Plaintiff presented no evidence about other non-certified employees in diabetes education who were under a similar contractual condition or otherwise similarly situated so as to allow this court to make any determination that Plaintiff was exposed to disadvantageous conditions to which other employees were not.

> **(b)** **Refusal to Transfer to Previous Position or New Department**

Plaintiff alleges that Defendant's refusal to transfer her back to her old position or to a temporary position in another department constituted an adverse employment action. The principle stated in the section above that a decision to transfer is not an adverse employment action absent any significant detrimental defects applies with equal force to the decision to deny a transfer request. Wagstaff v. City of Durham, 233 F. Supp. 2d 739, 745 (M.D.N.C. 2002), aff'd, 70 F. App'x 725 (4th Cir. 2003); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 608 (E.D.N.C. 2006). "[A] mere refusal to grant a transfer that an employee desires does not qualify as an

adverse employment action unless the decision 'had some significant detrimental effect' on the employee [such as] . . . reduced pay, a diminished opportunity for promotion, less responsibility, or a lower rank. Wagstaff, 233 F. Supp. 2d at 744 (quoting Boone, 178 F.3d at 256-57).

"Plaintiff must point to a genuine issue of material fact either that her requested transfer was a promotion and not merely a transfer or that Defendant's refusal to . . . transfer resulted in a 'significant detrimental effect' in her employment status." Royster v. Costco Wholesale Corp., 378 F. Supp. 2d 595, 605 (M.D.N.C. 2005). Here, "[n]othing in the pleadings demonstrates that Plaintiff's requested transfer was anything but a transfer, and that the refusal to transfer[,] or transfer back, . . . brought any significant detrimental effect such as reduced pay, diminished opportunity for promotion, reduced responsibility, or lower rank." Id. at 605-06. These were not adverse employment actions.

Although Plaintiff was not allowed a temporary light duty assignment during her finger surgery recovery, after taking leave for approximately two weeks, Plaintiff returned to work in the same position with no reduction in responsibility, hours, salary or benefits. It was not discriminatory for Defendant to

require Plaintiff to take a short leave instead of reassignment

to another department for light duty. See Carter v. Tisch, 822

F.2d 465, 466 (4th Cir. 1987) (holding that employer was not

under a duty to accommodate a disability by assigning employee

to permanent light duty); see also, Corbell, 2014 WL 4722194, at

*9 (stating that not providing light duty assignment of choice

and providing unpaid leave to allow time for recovery instead

was reasonable). Further, Plaintiff presented no evidence that

this refusal was because of her disability or anything more than

Defendant following DVAMC policy that applied to all DVAMC

employees.

### (c) Allegations of Being Followed, Stalked, Threatened with Arrest, and Harassment by Supervisors

Plaintiff alleges that she was followed and stalked by

co-workers spying on her actions on the ward; that her

supervisor followed her during on-duty hours on the ward; that

her co-workers made "ugly" comments about her work; and that she

was generally harassed by her supervisor and threatened with

arrest.

This Circuit has held that a manager yelling at an employee

during a meeting or directing employees to spy on a co-worker

"does not rise to the level of an adverse employment

action . . . without evidence that the terms, conditions, or benefits of her employment were adversely affected." Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997) (relating to Title VII claim). Plaintiff offered no evidence that her co-workers or supervisor were following her on the ward because she was disabled. It is not unreasonable for a supervisor, or even co-workers, to take action to verify that employees are present during their working hours and staying on task. There is not sufficient evidence to show that the co-workers or supervisors watching Plaintiff's daily work activities led to a change in the terms, conditions, or benefits of her employment.

Similarly, where co-workers are snubbing and vilifying an employee and the employer fails to correct the uncivility, it may be considered "ordinary workplace strife" which does not constitute adverse employment action. Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir. 2001) (retaliation claim). That co-workers may have made "ugly" comments about Plaintiff's work does not itself constitute an adverse employment action. There is not sufficient evidence that any negative comments by co-workers caused a change in the terms, conditions, or benefits of Plaintiff's employment.

As for the allegations that Plaintiff was threatened with arrest, the evidence shows that around the time of Plaintiff's first admonishment, she was instructed that if she returned to the ward that day, the police would be called. However, there is no evidence that the police were contacted – other than by Plaintiff herself – or that there was any change in the terms, conditions, or benefits of Plaintiff's employment because of this incident.

Nor can Plaintiff claim that the first written admonishment for "Absence without Leave" and "Failure to Follow Instruction on Requesting Leave" rose to the level of an adverse employment action. The admonishment did not lead to further discipline or cause a loss in pay, benefits, or rank. See Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 429 (4th Cir. 2015) (stating that neither written nor verbal reprimands qualified as adverse employment actions because they did not lead to further discipline). Plaintiff has failed to show that this admonishment or reprimand by Defendant had any formal or tangible impact on the terms or conditions of Plaintiff's employment. Newby v. Whitman, 340 F. Supp. 2d 637, 664 (M.D.N.C. 2004) (stating no adverse employment action when no evidence that plaintiff was

suspended, demoted, transferred, or given pay reduction due to receiving warning letter).

Whether the second admonishment leading to the imposition of Plaintiff's one-day suspension is an adverse employment action requires more discussion. It does not appear that the Fourth Circuit has made a finding of whether a one-day suspension can be an adverse employment action, but there is an unpublished opinion suggesting that it likely could be an adverse action. The Fourth Circuit, in <u>Agelli v. Sebelius</u>, found that a three-day suspension could be an adverse employment action. 466 F. App'x 174, 175 (4th Cir. 2012). It is unclear from the <u>Agelli</u> opinion whether the suspension was with or without pay, and likewise it is unclear from Plaintiff's evidence whether her suspension was with or without pay. However, even if found to be an adverse employment action, Plaintiff failed to demonstrate that Defendant took this action because of her disability, as explained in more detail below. The evidence shows that this suspension was for insubordination following a decision requiring Plaintiff to take leave when there were no light duty assignments for Plaintiff within the terms of DVAMC's policy.

**(d)** **Threats by Supervisor to Take Action to**
**Revoke Plaintiff's Nursing License**

Ms. Waddell-Schultz's threat to take action to initiate the revocation of Plaintiff's nursing license as outlined in the Proposed Suspension does not constitute an adverse employment action in this case because it was never put into effect and did not cause Plaintiff to suffer any loss in pay, benefits, or rank. See Adams, 789 F.3d at 429; Newby, 340 F. Supp. 2d at 663 (stating that threat to terminate employee or subject him to "fitness for duty" evaluation that never materialized did not amount to adverse employment action). Although the Proposed Suspension occurred on Plaintiff's last day on the ward, the reasons for Plaintiff not returning to work were unrelated to the Proposed Suspension, and in fact, Defendant began insisting that Plaintiff return to work following Plaintiff's absence due to injury.

Plaintiff's evidence does not support her contention that the Proposed Suspension was based on her disability. The Proposed Suspension related to Plaintiff's failure to complete her competencies. The evidence shows that all nurses on Plaintiff's ward were required to complete these competencies, and the evidence suggests there were competencies that

undisputedly fell within Plaintiff's restricted abilities, such as administering medicine.

> ### 2. Defendant Proffered Legitimate, Non-discriminatory Reasons for its Actions and Plaintiff has not Established Pretext

Even if this court were to assume that Plaintiff established an adverse employment action and established a prima facie case of discrimination, Defendant has proffered the following legitimate, non-discriminatory reasons for its actions in this case: that the transfer was based on Ms. Waddell-Schultz's understanding that Plaintiff failed to become certified as required by the Agreement; that Defendant was following the DVAMC policy regarding light duty assignments in its refusal to allow a temporary transfer; that Plaintiff's first admonishment was for being absent without requesting leave as instructed; that Defendant's "harassment" and threats regarding Plaintiff's nursing license related to Plaintiff's failure to complete the competencies required of all ward nurses; and that Plaintiff's final Proposed Suspension related to Plaintiff's insubordinate conduct towards her supervisors.

Plaintiff's offered evidence to rebut Defendant's reasoning is the allegation that Ms. Waddell-Schultz provided inconsistent explanations regarding Plaintiff's reassignment. Plaintiff is

correct that an employer providing different explanations at
different times can support a finding of pretext. See, e.g.,
EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir.
2001). However, this court previously determined that Ms.
Waddell-Schultz's statements in this regard were "entirely
compatible." Bell, 2013 WL 3157569, at *8. Accordingly, this
court finds that Plaintiff produced no evidence to suggest that
discriminatory animus fueled Defendant's decisions so as to
support a finding that Defendant's reasons were pretextual.

B.    **Retaliation**

The McDonnell Douglas burden-shifting scheme also applies
to retaliation claims. Morris v. BellSouth Telecomms., Inc., 302
F. Supp. 2d 515, 522 (M.D.N.C. 2004). To establish a prima facie
case of retaliation under either the Rehabilitation Act or the
ADA, a plaintiff must show that (1) she engaged in protected
conduct; (2) she suffered an adverse employment action
subsequent to engaging in protected conduct; and (3) there was a
causal link between the protected activity and the adverse
action. Perry, 429 F. App'x at 220 (quoting Laber v. Harvey, 438
F.3d 404, 432 (4th Cir. 2006)). "The employer may then rebut the
prima facie case, see McDonnell Douglas v. Green, 411 U.S. 792,
93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), by showing that there was

a legitimate non-discriminatory reason for the adverse action, Ross [v. Communications Satellite Corp.], 759 F.2d [355], 365 [4th Cir. 1985], after which the burden shifts back to the plaintiff to show that those reasons are pretextual. Carter v. Ball, 33 F.3d 450, 459 (4th Cir.1994)." Munday, 126 F.3d at 242.

For purposes of the summary judgment motion, Defendant does not contest that Plaintiff engaged in protected conduct. Plaintiff's prima facie case for retaliation turns on whether she presented sufficient evidence that she suffered an adverse employment action subsequent to engaging in protected conduct, and whether there was a causal link between the protected activity and the adverse action.

In a retaliation case, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006) (internal quotation marks omitted); Hoyle, 650 F.3d at 337-38. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take

place at work and that all employees experience." Burlington N., 548 U.S. at 68.

Additionally, in analyzing the third prong of the test, courts have held that mere temporal proximity between the two events is insufficient to satisfy the causation element of the prima facie requirement. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam). The Fourth Circuit has held that a lapse of three to four months between the protected activity and adverse action is "too long to establish a causal connection by temporal proximity alone." Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (unpublished). This Circuit has even held that a mere ten-week separation between the two events "is sufficiently long so as to weaken significantly the inference of causation between the two events." King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003). "Where the time between the events is too great to establish causation based solely on temporal proximity, a plaintiff must present 'other relevant evidence . . . to establish causation,' such as 'continuing retaliatory conduct and animus' in the intervening period." Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (citing Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007)).

In this case, the transfer from diabetes education to the nursing ward occurred several years after Plaintiff's first EEOC complaints, and the transfer had already been put in motion prior to the January 2010 EEOC complaint. In the absence of temporal proximity between the EEOC complaints and the transfer, Plaintiff failed to produce sufficient alternative evidence showing that the earlier EEOC complaints and the transfer were related.

On Plaintiff's other allegations of adverse actions, if this court assumes, for purposes of Defendant's motion, that Plaintiff could show an adverse action and show that there was a causal connection between the January 2010 EEOC complaint and the action such that Plaintiff satisfied her burden of presenting a prima facie case of retaliation, Defendant would still be entitled to summary judgment on Plaintiff's retaliation claim.

Defendant's proffered reasons, which were discussed above, were legitimate, non-retaliatory reasons. Defendant's rationale has not been rebutted by Plaintiff with sufficient evidence to call such reasons into question as pretext. In determining whether Plaintiff met her burden, this court examined whether there were inconsistencies or contradictions in Defendant's

proffered legitimate reasons such that a reasonable factfinder might find the reasons unworthy of credibility. However, mere conclusory allegations and assertions by Plaintiff do not suffice to establish pretext as long as Defendant's reasons are ones that might motivate a reasonable employer. Thus, even assuming that Plaintiff established a prima facie case of retaliation, she failed to show that a genuine issue of material fact existed as to pretext.

**C. <u>Harassment</u>**

Defendant also moved for summary judgment on Plaintiff's claim of harassment. To prevail on a hostile work environment claim, Plaintiff must prove that she: (1) is a qualified individual with a disability; (2) was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis for imputing liability to the employer. <u>Fox v. GMC</u>, 247 F.3d 169, 177 (4th Cir. 2001).

For purposes of the summary judgment motion, Defendant does not contest that Plaintiff was disabled and was subject to unwelcome harassment based on her disability. Defendant disputes that the harassment was sufficiently severe or pervasive so as

to alter Plaintiff's employment, and also disputes that liability can be imputed to Defendant.

"Plaintiffs must clear a high bar to satisfy the severe or pervasive test. . . . On summary judgment, the court must identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion." Adefila v. Select Specialty Hosp., 28 F. Supp. 3d 517, 525 (M.D.N.C. 2014) (citing EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)) (internal quotes and citations omitted). In this inquiry, Plaintiff must demonstrate that her employer's conduct was objectively hostile, such that a reasonable person would perceive it as such. Fox, 247 F.3d at 178. Factors the court may consider in analyzing whether the conduct was objectively hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Here, Plaintiff complains she was harassed about obtaining NCBDE certification and that the subsequent transfer to the nursing ward was harassment. However, the certification

requirement and transfer stemmed from an Agreement Plaintiff entered into with Defendant, which Ms. Waddell-Schultz reasonably believed should be enforced. Defendant provided Plaintiff the opportunity to take the certification exam along with several reminder notices. The notices encouraged and reminded Plaintiff to take the exam to fulfill the conditions of the Agreement. The notices in this case do not rise to the level necessary to state a hostile work environment claim. There is no evidence that these reminders related to anything other than fulfilling the Agreement. The subsequent transfer, which was based on the conditions of the Agreement, was not sufficiently severe to alter a term, condition, or privilege of Plaintiff's employment as was discussed above.

Plaintiff also alleges that Defendant's requests for Plaintiff to provide additional medical information regarding her disability and to begin filling out SF-71 forms for her one hour of LWOP each day was harassment. Plaintiff asserts that she was asked to provide additional medical information because Defendant lost her records. This request does not rise to the level necessary to state a hostile work environment claim. An employer has the right to request medical documentation for the purpose of assessing Plaintiff and her requests. Cf Koch v.

Schapiro, 759 F. Supp. 2d 67, 76 (D.D.C. 2011) ("[A]n employer's request for medical documentation for the purpose of assessing an employee's credibility or determining an appropriate accommodation is not an adverse employment action."); Tayag v. Lahey Clinic Hosp., Inc., 677 F. Supp. 2d 446, 453 (D. Mass. 2010) ("Being asked to produce additional paperwork, even if the request was unreasonable, does not constitute 'adverse employment action' under the ADA."), aff'd, 632 F.3d 788 (1st Cir. 2011).

The same is true for the request that Plaintiff fill out SF-71 forms. Plaintiff does not take issue with the policy that she accrues LWOP for her accommodation to work shorter hours (as she has done for several years), but argues that being asked to fill out DVAMC forms for the leave was harassment. There is no evidence that Plaintiff was singled out to fill out these forms, and it is not severe and pervasive so as to rise to the level of a hostile work environment.

Finally, although Plaintiff did not allege in her harassment claim that the comments by her co-workers and the stalking and threats by her co-workers and supervisors were harassment, this court finds that such instances would not rise to the level necessary to state a hostile work environment

claim. Plaintiff may have had a strained relationship with some of her co-workers, but the evidence shows that her co-workers did provide aid to Plaintiff. Further, Plaintiff was assigned a preceptor to help with job duties. Plaintiff's supervisor met with Plaintiff and her preceptor once a week to check on Plaintiff's progress. While Plaintiff may have subjectively perceived the ward as hostile, the evidence does not support an objective view that it was deeply repugnant or anything more than occasional insensitive conduct by some coworkers that may sporadically wound or offend but does not alter employment. See Edmonson, 118 F. App'x at 730; Shiflett v. GE Fanuc Automation Corp., No. 97-1687, 1998 WL 386116, at *4 (4th Cir. June 19, 1998).

Further, the allegations that Plaintiff was threatened with arrest are not supported by evidence sufficient to suggest a hostile work environment. There is no evidence that the police were contacted – other than by Plaintiff herself – or that this was anything other than a single incident relating to Plaintiff's first admonishment. Furthermore, Plaintiff returned to work following the admonishment with no apparent change to the terms, conditions, or benefits of her employment.

As for the allegations of stalking, it is not unreasonable for a supervisor, or even co-workers, to check that employees are present during their working hours and performing their assigned duties. There is no legally sufficient evidentiary basis to show that the co-workers or supervisors monitoring Plaintiff's daily work activities were objectively severe and pervasive workplace harassment.

Based on the foregoing, this court will grant Defendant's motion for summary judgment as to Plaintiff's harassment claim.

## V.    CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED** and that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant's motion to withdraw and motion to continue (Doc. 44) is **DENIED AS MOOT.**

A judgment in accordance with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 27th day of December, 2016.

_____
United States District Judge